**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

**SELENA E. MOLINA**
**SENIOR MAGISTRATE IN CHANCERY**

**LEONARD L. WILLIAMS JUSTICE CENTER**
**500 NORTH KING STREET, SUITE 11400**
**WILMINGTON, DE 19801-3734**

December 29, 2025

Kashif I. Chowdhry, Esquire
Madeline S. Bloom, Esquire
Parkowski, Guerke & Swayze, P.A.
909 Silver Lake Blvd., 1st Floor
Dover, DE 19904

Jason C. Powell, Esquire
Laurel A. LaLone, Esquire
The Powell Firm, LLC
1813 N. Franklin Street
Wilmington, DE 19802

Dean A. Campbell, Esquire
Law Office of Dean A. Campell, PA
703 Chestnut Street
Milton, DE 19968

> RE: *William H. Williams, V., et al. v. Susan F. D'Andelet, et al.*,
> C.A. No. 2024-1349-SEM

Dear Counsel:

In this final report, I recommend the principal's motion to dismiss be granted and this case closed. Ultimately, this action, as I explain more fully herein, amounts to an unsupported attack on the principal's autonomy and must be dismissed at her behest under the Durable Personal Powers of Attorney Act.

## I. BACKGROUND

This report builds upon my June 9, 2025 oral ruling[1] and July 25, 2025 report.[2] It is being issued with the benefit of oral argument on November 25, 2025. I provide only a brief background.[3]

Through this action, William H. Williams, V and Steven D. Williams (the "Plaintiffs"), individually and in their purported capacity as agents for Nettie May Williams (the "Principal") dispute the authority of Susan F. D'Andelet (the "Defendant")[4] to act on behalf of the Principal. Specifically, they contest the validity of documents executed by the Principal on September 6, 2024 through which the Defendant was appointed as the Principal's sole agent (the "2024 Documents").[5]

I begin with a bit about the family. The Plaintiffs and the Defendant are the adult children of the Principal, who enjoyed her 95th birthday on November 23rd.[6] The Plaintiffs plead that in or around her late 80s, the Principal was diagnosed with dementia; the medical records cited in support, however, reflect only that the

---

[1] *See* Docket Item ("D.I.") 46.

[2] D.I. 50.

[3] I take this brief background from the well-pled allegations set forth in the Plaintiffs' second amended complaint, *see* D.I. 60 ("Second Am. Compl.").

[4] I use the singular "Defendant" to avoid confusion but acknowledge that the Plaintiffs brought this action against the Defendant in multiple capacities.

[5] Second Am. Compl. ¶ 18.

[6] D.I. 65 Ex. B.

Principal was treated for "lack of memory."[7] By 2021, though, her medical records reflect she was diagnosed with late onset Alzheimer's or vascular dementia.[8] After these diagnoses, in 2022, the Principal's husband passed, and she looked to her children for comfort and support. [9]

Initially, it was the Plaintiffs who stepped up. They took turns either staying with their mother or having her stay with them. They were, together, her primary caregivers.[10] But through a power of attorney and advance healthcare directive, both executed in August 2022, the Principal named her three children as equal co-agents.[11] And, ultimately, the Principal decided it was her daughter, the Defendant, with whom she wanted to live fulltime.[12]

Her children respected her wishes and since around October 2022, the Principal has lived with the Defendant in Ocean View, Delaware.[13] To their chagrin, however, the Plaintiffs have had difficulty visiting and maintaining a relationship

---

[7] Second Am. Compl. Ex. H at 20.

[8] *Id.* at 1.

[9] Second Am. Compl. ¶ 6.

[10] *Id.*

[11] Second Am. Compl. ¶¶ 3, 8.

[12] *Id.* at ¶ 9.

[13] *Id.*

with the Principal in the years since.[14] Specifically, they aver they have not seen or heard from their mother since April 2024.[15]

Under this arrangement, the Plaintiffs have grown concerned about the Defendant's actions as co-agent, making financial and medical decisions for the Principal.[16] The amended complaint addresses those concerns in some detail, but it is neither here nor there for purposes of this report. I focus, rather, on the allegations that go to the Principal's capacity.

The Plaintiffs allege that the Principal's "dementia has progressed since her initial diagnosis in 2018 such that, at the present time, she lacks capacity to manage personal financial and legal matters independently."[17] The Plaintiffs allege that from 2022 through 2024, before they lost contact, the Principal "exhibited symptoms of confusion, forgetfulness, extreme fatigue and dependance . . . and such symptoms continued to erode, along with increased [frailty] and weakness[.]"[18] They allege

---

[14] Second Am. Compl. ¶¶ 14–16.

[15] *Id.* at ¶ 10.

[16] *Id.* at ¶¶ 10–13.

[17] *Id.* at ¶ 17.

[18] *Id.* Such symptoms, per affidavits attached to the complaint, include the Principal: (1) telling a friend in 2022 that her husband was 149 years old when he died, (2) speaking in incomplete sentences "on many occasions in 2023 and 2024," (3) getting confused mid-sentence, (4) asking if she had enough money in her wallet to cover, and asking for help paying, a dinner bill, (5) forgetting where the bathroom was in her home, (6) forgetting

"even in 2023, [the Principal] was dependent on others to handle her finances and manage her medications and could not even order off a restaurant menu without assistance."[19] Further, they allege the Principal does not drive and "is no longer able to operate a telephone without assistance."[20]

Based on these allegations, the Plaintiff seek to challenge the 2024 Documents, through which the Defendant was appointed as the Principal's sole agent. The Plaintiffs contend the Principal lacked capacity to make that change or was unduly influenced by the Defendant to do so. They aver the Principal is "suffering from dementia, easily confused, weak and frail and fully dependent on others (particularly [the Defendant]) for management of her care and property."[21] The Defendant, per the Plaintiffs, has taken advantage of these frailties to the Principal's detriment.

The Plaintiffs originally filed this action on December 27, 2024 seeking to remove the Defendant as an agent and for other relief.[22] The Plaintiffs amended the

---

names and friends, (7) asking about a nonexistent dog, and (8) oversleeping and skipping meals. Second Am. Compl. Exs. I-L.

[19] Second Am. Compl. ¶ 17.

[20] *Id.* at ¶ 50.

[21] *Id.* at ¶ 19.

[22] D.I. 1.

complaint on January 24, 2025.[23] Heavy motion practice followed; I will not run through that in detail. Notably, on June 9, 2025, I heard oral argument on seven pending motions. For the reasons explained at that hearing, I granted the Principal's motion to intervene in this action, denying the Plaintiffs' motion to stay intervention. I also granted the Plaintiffs' motion to amend the underlying complaint. I took under advisement: (1) a motion to disqualify, (2) competing discovery motions, and (3) a motion to compel the Principal to submit to an examination. Through my July 25, 2025 report, I denied (1), granted in part (2), and denied (3).

Through this ruling, I address and grant the Principal's August 8, 2025 motion to dismiss to operative complaint (the "Motion"), which was fully briefed as of October 3, 2025 and argued on November 25, 2025.[24] In connection with the Motion, the parties submitted additional records.[25] Relevant to my ruling herein, the

---

[23] D.I. 6.

[24] *See* D.I. 54, 70, 72. The minute order scheduling the November, 25, 2025 hearing on the Principal's motion to dismiss incorrectly included the Defendant's motion to dismiss on the agenda. *See* D.I. 72. The Defendant's motion to dismiss, however, was never fully briefed when the Plaintiffs filed a motion for leave to amend the complaint. *See* D.I. 31. After I granted that motion and the second amended complaint was filed, the Defendant did not renew her motion to dismiss and, instead, joined the Principal's motion to dismiss. *See* D.I. 56. Thus, I will not address the Defendant's motion to dismiss and rather rule dispositively on the Principal's motion to dismiss.

[25] The Plaintiffs submitted the Defendant's answers to interrogatories, through which the Defendant affirmed that the Principal executed a new trust or amended the previous trust with the assistance of counsel on September 6, 2024, in addition to the execution of the power of attorney revocation and advanced healthcare directive revocation. D.I. 61 Ex. A.

Principal submitted multiple confidential exhibits containing medical records spanning June 6, 2023 through July 18, 2025. [26] The medical records indicate the Principal "does have marked hearing loss . . . greatly impact[ing] her ability to communicate . . . [and] may have age-related memory loss" that could "be interpreted as confusion" but, the medical provider described the Principal as "stable" and "oriented" with "no signs of advanced or worsening dementia."[27]

## II.   ANALYSIS

Through this action, the Plaintiffs ask this Court to undo the Principal's decision to appoint the Defendant as her agent. The Durable Personal Powers of Attorney Act permits such a challenge, but "[u]pon motion by the principal, who shall be presumed to have legal capacity, the Court shall dismiss [such a challenge], unless the Court finds that the principal lacks capacity to revoke the agent's authority or the personal power of attorney."[28] Stated another way, the Principal has (1) a statutory right to dismissal of this type of action if she has the requisite capacity,[29] and (2) a statutory presumption of capacity.[30] The party challenging capacity, thus,

---

[26] *See* D.I. 65 Exs. B–J.

[27] *Id.*

[28] 12 *Del. C.* § 49A-116.

[29] *Id.*

[30] *Id.*

bears the burden to present a *prima facie* case of lack of capacity. "Only if she does so can—and will—this Court decline to grant a principal's motion to dismiss and order further inquiry into the principal's capacity."[31]

Vice Chancellor Glasscock first developed this test in *Parkhurst v. Nalley*,[32] and I expanded upon its utility in *Harker v. Grimes* as follows:

> Its gatekeeping function is of paramount importance and mirrors the gatekeeping this Court exercises with other capacity challenges, namely, adult guardianships and will contests. In the former, this Court will not schedule a hearing on a petition for guardianship or appoint an attorney *ad litem* for a person with an alleged disability unless the petitioner seeking guardianship has pled sufficient allegations regarding lack of capacity. The petitioner(s) must do so in their originating petition and with the support of a physician's affidavit, on the Court's form. Similarly, a will contest alleging lack of testamentary capacity, weakened intellect, or susceptibility will not survive a motion to dismiss for failure to state a claim unless the plaintiff avers specific, non-conclusory facts as to diminished capacity. In both arenas, this Court ensures that the party challenging capacity states a non-conclusory basis for their challenge before the Court will allow further inquiry or investigation. By drawing this line, the Court shows great respect for, and protects, personal liberty, autonomy, and dignity.[33]

The *Parkhurst* test, under the *Harker* reasoning, sets up an initial, pleading-stage review of the allegations of incapacity. It requires this Court to take a close look at the underlying pleadings to see if there is enough pled to overcome the

---

[31] *Harker v. Grimes*, 2022 WL 3665050, at *6 (Del. Ch. May 31, 2022), *adopted*, 2022 WL 2177693 (Del. Ch. June 15, 2022).

[32] C.A. No. 11930-VCZ (SG).

[33] *Harker*, 2022 WL 3665050, at *6.

Principal's presumed right to dismissal. As I explained in *Harker*, "[c]onclusory or vague allegations of lack of capacity should not be sufficient to force an inquiry into a principal's capacity[,]" because doing so would render "the presumption of capacity to seek dismissal of challenges to such appointment . . . meaningless."[34] But what was left unsaid in *Parkhurst* and *Harker* was any rule-based framework or defined standard of review. In my mind, the answer depends on the posture of the pending case.

The Durable Personal Powers of Attorney Act does not require a principal to move to dismiss these types of actions within a specific amount of time or at a particular stage of the proceedings. The statutory right to dismissal is not so limited. But in *Parkhurst* and *Harker*, the principals intervened quickly, at the pleading stage. Thus, the reviewing courts looked at the motions before them as ones for a pleading-stage dismissal and required a *prima facie* showing of incapacity from the pleadings.[35] Although neither decision expressly cabined the Court's inquiry under a specific prong of Court of Chancery Rule 12(b), implicit in each was a nod to Court

---

[34] *Id.* at *7.

[35] Notably, in *Parkhurst*, the presiding then-Master in Chancery initially ruled that the Court should conduct a hearing to determine the principal's capacity before ruling on the motion to dismiss. *Parkhurst v. Nalley*, C.A. No. 11930-VCZ, D.I. 59. On exceptions, and emphasizing the intrusive nature of a capacity hearing, Vice Chancellor Glasscock reversed that ruling when setting for the *Parkhurst* test.

of Chancery Rule 12(b)(6). Herein, I hold when a principal's challenge is brought at the pleading stage, Rule 12(b)(6) is the appropriate framework to determine whether to dismiss under 12 *Del. C.* § 49A-116 and the *Parkhurst* test.[36]

> The standard for dismissal under Rule 12(b)(6) is settled:
>
> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [iv] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[37]

Although this is a plaintiff-friendly standard, I cannot "simply accept conclusory allegations unsupported by specific facts, nor . . . draw unreasonable inferences" in favor of the pleader.[38]

Under Rule 12(b)(6), the question becomes: did the Plaintiffs plead sufficient non-conclusory allegations to support a cognizable, or reasonably conceivable, claim that the Principal lacked contractual capacity at the relevant times. "Lack of

---

[36] In so holding, I reject the arguments made at oral argument that this could be analyzed under a jurisdictional lens, with an expanded record. The question is not whether this Court has jurisdiction over the claims or parties; it does. The question is whether the Plaintiffs' claims should be dismissed at the Principal's behest under the statutory framework as interpreted by *Parkhurst* and *Harker*. That framework begs an inquiry into whether the pleader stated a reasonably conceivable (or *prima facie*) claim for lack of capacity.

[37] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (quotation marks and citations omitted).

[38] *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

contractual capacity will be found if [the Principal] was 'incapable of understanding the nature and effect of the transaction' or her mental faculties were so impaired as to render her 'unable to properly, intelligently and fairly protect and preserve [her] property rights[,]" at the time the challenged document was executed or authorized.[39] To plead a *prima facie* claim for lack of contractual capacity the Plaintiffs needed to plead specific, non-conclusory facts as to the Principals' diminished capacity at the time the challenged documents were executed.[40] The allegations in the operative pleading, the second amended complaint,[41] fall short.

*Parkhurst* and *Harker* set up a helpful spectrum of what is, and is not, enough to plead lack of capacity sufficient to overcome a principal's challenge. In *Parkhurst*, the petitioner alleged facts showing the principal believed—at the relevant time—

---

[39] *McCallister v. Schettler*, 521 A. 2d 617, 621 (Del. Ch. 1986) (internal citations omitted). *See also* 16 *Del. C.* § 2503 (creating new capacity disputes that address a principal's capacity to appoint an agent under a health-care power of attorney or identify a default surrogate).

[40] *Harker*, 2022 WL 3665050, at *4.

[41] The second amended complaint was docketed on September 12, 2025, after the Motion was filed. D.I. 60, 54. But it was not a surprise; I granted the Plaintiffs' motion for leave to amend on June 10, 2025, and the parties knew we would operate under the amended pleading going forward. *See* D.I. 46–47.

I constrain myself to the second amended complaint and do not consider the various documents attached to the Motion, and response thereto. The Principal attached various medical records, and other documents, as Exhibits A–K to the Motion, and the Plaintiffs' answering brief pointed me to discovery responses. D.I. 65, 61. These are outside the scope of the pleadings and do not aid me in answering whether the Plaintiffs have stated a *prima facie* claim for lack of capacity.

that (1) she was being followed, (2) her deceased husband was still alive, and (3) people were lurking in her attic. The petitioner further averred that the principal was unable to recollect legal actions she had taken. Based on these averments, Vice Chancellor Glasscock initially found the petitioner pled a *prima facie* claim for lack of capacity and ordered further evaluation of the principal's capacity.[42]

The initial pleadings in *Harker* were much less compelling. In *Harker*, the petitioner initially pled that the ninety-four year old principal expressed delusional statements and grandiose behavior, including a delusion regarding the current president.[43] Additionally, the petitioner averred that the principal would frequently ask the same question several times, forgetting the answer.[44] The petitioner argued the "principal's advanced age, memory loss, substantial cognitive deterioration and decline during the time of the execution of the POA" showed she did not possess the requisite legal capacity to execute the disputed documents.[45] The pleadings were conclusory and insufficient to state a *prima facie*, or reasonably conceivable, claim of lack of capacity.[46] Specifically, I found the averments did not indicate that the

---

[42] *Parkhurst*, C.A. No. 11930-VCZ, D.I. 107 at 44:9–14 (Del. Ch. May 2, 2018) (Glasscock, V.C.) (TRANSCRIPT)).

[43] *Harker*, 2022 WL 3665050, at *7.

[44] *Id.*

[45] *Id*.

[46] *Id.*

principal was incapable of understanding the nature and effect of the power of attorney at issue or her motion to dismiss and at best showed a "gradual weakening of mental capacity, which may be expected with someone of [her] age."[47] I held that "declining or weakening capacity and old age" do not amount to a reasonably conceivable claim of a lack of capacity.[48]

*Parkhurst* and *Harker* are not, however, the only cases through which this Court has addressed whether alleged lack of capacity is well pled. That question comes up frequently in will contests. Testators have the same presumed capacity as principals and this Court will dismiss, at the pleading stage, inconceivable claims for lack of capacity. For example, in *Sweeney v. Sweeney*, I found a claim premised on lack of capacity inconceivable where:

> The only non-conclusory, specific factual allegations in the Amended Petition that may support lack of testamentary capacity are: (1) Decedent was 84 years old, (2) Decedent had cancer and vertigo, (3) Decedent relied on Respondent to help with her finances and run errands, (4) Decedent had surgery in January 2020 and did not tell Petitioner about it beforehand, and (5) Decedent did not tell Petitioner about the reoccurrence of her cancer when Petitioner visited her in January 2020.[49]

---

[47] *Id.*

[48] *Id.*

[49] 2021 WL 5858688, at *3 (Del. Ch. Nov. 30, 2021), *adopted*, 2021 WL 5999620 (Del. Ch. Dec. 17, 2021).

I held similarly in *Buck v. Estate of McCaffery*, where I found even the lesser showing of a weakened intellect had not been made. I explained:

> The Plaintiff has failed to plead non-conclusory facts from which I can reasonably infer the Decedent was susceptible, of weakened intellect, or without testamentary capacity when she executed the Will. The Plaintiff pleads merely that the Decedent was "not of sound mind", had "weakened mental capacity," and "suffered from declining intellect as a result of her advanced age". The Plaintiff further pleads the Decedent was isolated, admitted to Harbor Healthcare, and "had become dependent on [the Executor] for her well-being and financial management." Notably absent is any information about the Decedent's medical diagnoses, medications, ability to reason or make decisions for herself, or the level of care or supervision she required while at Harbor Healthcare.[50]

I have also addressed claims for lack of capacity in the property context. For example, in *Glass v. Baker*, I addressed whether a complaint stated a reasonably conceivable claim to undo a property transfer premised on lack of capacity. There, the petitioner was living with the person who lacked capacity and from that direct knowledge pled they had "shown signs of mental decline since 2006, ha[d] been unable to safely life alone since 2010, and ha[d] been diagnosed with dementia since approximately 2011[,]" around 9 years before the petition was filed.[51] Further, the petitioner pled that the person "was suffering from memory issues around the time

---

[50] *Buck v. Est. of McCaffery*, 2022 WL 3665763, at *4 (Del. Ch. Apr. 29, 2022), *adopted sub nom. Buck v. McCaffery*, 2022 WL 2101343 (Del. Ch. June 8, 2022).

[51] *Glass v. Baker*, 2021 WL 4073448, at *4 (Del. Ch. Apr. 13, 2021), *adopted*, 2021 WL 1634579 (Del. Ch. Apr. 27, 2021).

of the property transfer and, thereafter, believed he had consulted with a deceased attorney regarding the transaction."[52] Ultimately, I found "these allegations, taken together, support a reasonably conceivable claim for lack of capacity."[53]

Here, I cannot do the same. The Plaintiffs' assertions align more closely with the less compelling allegations of *Harker*, *Sweeney*, and *Buck* than with the *prima facie* showing in *Parkhurst* or *Glass*.

The Plaintiffs allege the Principal lacked capacity based on a dementia diagnosis starting in 2021 and anecdotal evidence of memory lapses and confusion. I will address these in turn.

The Plaintiffs pled that the Principal suffers from dementia and was first diagnosed in or about 2018. But the medical records cited in support of that allegation provide merely that she was treated for "lack of memory." Rather than a diagnosis, the medical records reflect that in 2021 the Principal had "changes signifying onset of vascular dementia[,]" was being treated for issues related to unspecific dementia, and was proscribed medication associated with dementia. The records reflect a diagnosis of "Alzheimer's disease with late onset" on February 16, 2021. Records from 2023 reflect that the Principal (or her supporter) were interested

---

[52] *Id.*

[53] *Id.*

in discussing with medical providers "oncoming dementia." The Plaintiffs then aver in conclusory fashion that the Principal's "dementia has progressed since her initial diagnosis in 2018 such that, at the present time, she lacks capacity to manage personal financial and legal matters independently."[54]

A mere diagnosis of dementia does not equal a *prima facie* claim for lack of capacity. One need not be a medical professional to know that dementia is a broad and generalized diagnosis that has varying degrees of severity and impact on a person's ability to make decisions. Someone with a dementia diagnosis can still have contractual capacity.[55] Thus, to overcome the presumption of capacity, the Plaintiffs needed to do more than point to a dementia, or even progressing dementia, diagnosis.

To support the leap from progressing dementia to lack of capacity, the Plaintiffs aver that the Principal "exhibited symptoms of confusion, forgetfulness, extreme fatigue and dependance . . . from the summer of 2022 through 2024" when the Plaintiffs lost contact.[56] The Plaintiffs attached to the complaint four affidavits providing firsthand accounts of the Principal's confusion and forgetfulness. The affidavits provide specific instances of confusion, such as the Principal saying her

---

[54] Second Am. Compl. ¶ 17.

[55] *See In re Kittila*, 2015 WL 688868, at *12 (Del. Ch. Feb. 18, 2015) (explaining "a diagnosis of dementia, including Alzheimer's dementia, is not conclusive of a person's testamentary capacity").

[56] Second Am. Compl. ¶ 17.

husband was 149 years old when he passed, thinking her son had a dog when he did not, or being unable to order a meal or pay when at a restaurant. The affidavits also speak to general confusion or forgetfulness, including by highlighting "many occasions" on which the Principal spoke in incomplete sentences, would lose her train of thought mid-sentence, or would ask where her money was.

The anecdotes in these affidavits mirror the averments of the petitioner in *Harker*; like in *Harker*, the affidavits show a gradual weakening with age but not a conceivable claim that the Principal could not understand the nature and effect of the 2024 Documents or the Motion. And, unlike in *Parkhurst*, the affidavits do not provide factual predicate from which it would be reasonable to infer that the Principal was so impaired that when it came to the 2024 Documents and the Motion, she was unable to properly, intelligently and fairly protect and preserve her property rights.[57] That connection is missing completely.

The Plaintiffs ask me to leap from a dementia diagnosis in 2021 and confusion and forgetfulness from 2022 through 2024 to a lack of capacity at the time the 2024 Documents were signed. That is not a reasonable inference from the pleadings. The factual averments from 2021 through 2024 support some aging and weakening of

---

[57] *Harker*, 2022 WL 3665050, at *6 (quoting *McAllister v. Schettler*, 521 A.2d 617, 621 (Del. Ch. 1986)).

intellect, but nothing so pervasive or serious that it would be reasonable to infer lack of contractual capacity.

Further, I cannot ignore the November 1, 2024 letter from the Principal's counsel, which was attached to the operative complaint. Through that letter, the Principal's counsel disclosed that he took precautions prior to his preparation of the 2024 Documents; he purports to have reviewed medical records and conducted two extensive interviews with the Principal before she executed the 2024 Documents. Short of accepting these representations as true, it is, at least, reasonable to assume from counsel's involvement and representations that the Principal did not display the same confusion or forgetfulness during the most relevant time—when the 2024 Documents were executed.

Under the lens of Rule 12(b)(6), taking all well-pleaded factual allegations as true and drawing all reasonable inferences in favor of the Plaintiffs, I conclude the Plaintiffs failed to state a *prima facie* claim of lack of capacity. Thus, the presumption of capacity under Section 49A-116(c) applies and this Court should not permit any further inquiry into the Principal's capacity on the current record.[58]

---

[58] The Plaintiffs argue that their undue influence claim is an independent basis on which this action should proceed despite the Principal's challenge. I disagree. True, undue influence can be found with mere weakened intellect rather than lack of capacity. But the Plaintiffs are still trying to usurp the Principal's decision-making authority to secure relief under Section 49A-116(c); they cannot do so without rebutting the presumption of capacity. Here, at the pleading stage, the Plaintiffs failed to plead a *prima facie* claim of

## III.   CONCLUSION

The Motion to dismiss should be granted.  For *Parkhurst* and *Harker*, this Court stayed its dismissal and allowed the plaintiffs to amend their complaints. I decline to do so here. The Principal's rights and applicable standard are no longer matters of first impression and the Plaintiffs have had a full opportunity to plead their claims and respond to the Motion. Thus, I see no basis to permit a stay or another attempt to plead the necessary predicate to overcome the Principal's challenge. Instead, the second amended complaint should be dismissed, and this case should be closed.

This is a magistrate's final report and exceptions may be filed under Court of Chancery Rule 144.

Respectfully,
*/s/ Selena E. Molina*
Senior Magistrate Judge

---

lack of capacity and this Court should not permit any further inquiry. Such would be inappropriate under the Durable Personal Powers of Attorney Act, *Parkhurst*, *Harker*, and this Court's precedent respecting, and protecting personal liberty, autonomy, and dignity.